UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

MILESTONE SHIPPING S.A.          :
                                 :
            Plaintiff,           :
                                 :          11 CV 0014 (VM)
      - against -                :          ECF CASE
                                 :
ESTECH TRADING LLC and           :
AMERICAN ENERGY SERVICES, INC.   :
                                 :
            Defendants.          :

-------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM IN RESPONSE TO AND IN OPPOSITION OF DEFENDANT AMERICAN ENERGY SERVICE'S MOTION FOR SUMMARY JUDGMENT

TISDALE LAW OFFICES, LLC
60 East 42nd Street, Suite 1638
New York, NY 10165
(212) 354-0025 / (212) 869-0067 (fax)

*Attorneys for Plaintiff,*
*Milestone Shipping S.A.*

Claurisse C. Orozco, Esq.
Thomas L. Tisdale, Esq.

TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................ii

PRELIMINARY STATEMENT / PROCEDURAL BACKGROUND ....................1

THE TRUST LETTER/LETTER AGREEMENT....................................................2

    a.  AES may direct the funds be retained..............................................................3

    b.  AES's right to demand return of the funds .....................................................4

THE LOAN AGREEMENT .....................................................................................8

THE ESCROW AGENTS .........................................................................................9

JOINT VENTURE RELATIONSHIP .....................................................................10

FRAUD ....................................................................................................................11

CONCLUSION........................................................................................................13

TABLE OF AUTHORITIES

Cases

Pages

*Georgia-Pacific Corp. v. Lieberam*,
959 F.2d 901, 906 (11th Cir. 1992)...............................................................3

*Trustees of the Southern California Pipe trades Health and Welfare Trust*
*Fund v. Temecula Mechanical, Inc.*,
438 F. Supp. 2d 1156, 1166 (C.D. Cal. 2006)........................................4

*Shepley v. New Coleman Holdings., Inc.*,
174 F.3d 65, 70(2d Cir. 1998)...............................................................4

*Chemical Bank v. Affiliated FM Ins. Co.*,
1993 A.M.C. 1743, 1749 (S.D.N.Y. 1993) ...............................................6

*Oreck Corp. v. Whirlpool Corp.*,
579 F.2d 126, 133 (2d Cir.) (*en banc*), *cert. denied*, 439 U.S. 946 (1978)..............6

*Cofacredit S.a. v. Windsor Plumbing Supply, et al.*,
187 F.3d 229, 238-39 (2d Cir. 1999).......................................................11, 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
MILESTONE SHIPPING S.A.                          :
                                                 :
                        Plaintiff,               :
                                                 :               11 CV 0014 (VM)
            - against -                           :               ECF CASE
                                                 :
ESTECH TRADING LLC and                           :
AMERICAN ENERGY SERVICES, INC.   :
                                                 :
                        Defendants.              :
-----------------------------------------------------X

## PLAINTIFF'S RESPONSE TO AES' MOTION FOR SUMMARY JUDGMENT

Plaintiff Milestone Shipping S.A. ("Milestone") hereby submits its response to Defendant

American Energy Services, Inc.'s ("AES") Motion for Summary Judgment.  For the reasons stated

below, AES' Motion should be denied.

## PRELIMINARY STATEMENT

Detailed facts relevant to Milestone's Response to AES's Motion for Summary Judgment

are set forth in Plaintiff's Memo of Law in Support of Its Motion for Summary Judgment

("*Plaintiff's Moving Brief*"); Plaintiff's Local Rule 56.1 Statement ("*Plaintiff's Moving Stmt*"), the

Declaration of Claurisse Campanale Orozco *("Orozco Moving Decl.") and* the Declaration of

Iurii Voievudskyi ("*Voievudskyi Initial Decl.*") which were all filed in support of Plaintiff's Motion

for Summary Judgment at Docket Entry No.s 48, 49, 50 and 51, respectively.  These documents

are fully incorporated herein and referenced throughout this memo.[1]  Plaintiff Milestone has also

filed its Rule 56.1(b) Statement in response to AES's Rule 56.1 Statement ("*Plaintiff's 56.1(b)*

---

[1] Courtesy copies of these documents were submitted to the Court on July 26, 2011 and will not be separately submitted to the Court or e-filed.

("*Voievudskyi Response Decl.*") which is also incorporated herein and referenced throughout this memo.

While stated differently, the parties agree that the issue before the Court is basically the same: Which agreement governs the distribution of the $500,000 that was loaned to Estech Trading LLC ("Estech") by AES to fund an Escrow Agreement between Estech and Milestone.[2] In its brief, AES has embellished much of the exchanges between the parties in an attempt to distort the reality of the commercial transaction between the parties. AES's exaggeration of the meaning attached to the documents at issue results in AES defeating its own motion.

### 1.    The Trust Letter/Letter Agreement

Each Party's interpretation of the Letter Agreement between AES and Mahoney & Keane ("M&K), the escrow agents herein, are set forth in their respective briefs. *Plaintiff's Moving Brief at 8; AES Brief at 13-18.* AES overstates the purpose of this document beyond its contained terms through innuendo[3] that is supported by no evidence. AES states, for the first time, that its $500,000 loan to Estech was subject to two conditions: One being acceptable documentation of the underlying shipping transaction; and, the other being acceptable collateral to secure that loan and that because these conditions were not satisfied, the $500,000 was never released to Estech for its benefit. AES then states: "Milestone was aware of these conditions but Milestone never did anything to request or confirm transfer of the money from trust to escrow or communicated with AES in any way whatsoever. Milestone is solely responsible for the

---

[2] AES phrases the issue as whether the $500,000 transferred into trust by AES to Mahoney & Keane under the express terms of a letter agreement dated December 2, 2010 from Mahoney & Keane ("M&K") to AES ever moved from that trust to an escrow entered into between Milestone, Defendant Estech and M&K." *See AES Brief at 1.*
[3] AES refers to the Dec. 2, 2010 letter between itself and M&K as a "Trust Agreement." Milestone has identified it as a "Letter Agreement" and will continue to do so throughout this brief.

dilemma in which it finds itself." *See, AES Brief at 1.* Not surprisingly, AES cites no evidence to support Milestone's 'dilemma,' because there is none.

AES's unsupported *ex post facto* statements skew the pertinent facts in an attempt to distort the true intent of all parties involved in this transaction. AES is not an innocent party in this deal whose goals were simply misunderstood. AES knew exactly what it was doing when it loaned over one million dollars to Estech to fund a venture that it expected would be, in all respects, profitable. Because that venture has now failed, AES is attempting to modify the original intent of all the parties based on a Letter Agreement it had with M&K, while ignoring all of the other documentary evidence that exists to defeat AES's position.

AES and Milestone agree on most of the terms of the Letter Agreement. *See AES Brief, at 17-18.* The disagreement arises as to the meaning of two sentences therein. The first states "If an escrow agreement acceptable to Milestone and Estech can be reached, AES may direct that the $500,000 be retained by M&K as escrow agent." The second states: "In no event shall any discussions prior to reaching an acceptable agreement affect M&K's duty to return the $500,000 to AES upon AES's written request." *Plaintiff's Moving Stmt. ¶¶57-59.*

### a. AES May Direct the funds be retained.

AES spends a significant amount of time discussing the meaning of this statement by placing a condition precedent on the loan that AES "may" direct M&K to act as escrow and "may" direct that these funds be retained by them. However, the use of the word may simply makes this condition an option and not a requirement. "May" refers to a possibility, to something that might happen. *Georgia-Pacific Corp. v. Lieberam*, 959 F.2d 901, 906 (11th Cir. 1992).

If it was actually required that AES specifically direct the funds be transferred before such transfer can be concluded, AES should have used words such as "shall" or "will" which

3

indicated an obligation. "Will" can reasonably be used to refer to "simple futurity" *Id.* and use of the word "shall" conveys a future or as of yet unperformed obligation. *Trustees of the Southern California Pipe trades Health and Welfare Trust Fund v. Temecula Mechanical, Inc.*, 438 F. Supp. 2d 1156, 1166 (C.D. Cal. 2006)(citing Merriam Webster's Collegiate Dictionary 1075-76 (10th ed. 1999)(defining "shall" to mean "will have to: Must"; used to express what is inevitable or seems likely to happen in the future"; "used to express simple futurity")).

As drafted, with use of the word 'may,' this sentence makes AES's obligation to direct M&K to retain the funds as escrow agent just an option. The fact that such direction was not formally given is of no significance, especially under the circumstances here, where other documentary evidence supports a finding that the funds are subject to the Escrow Agreement. *See infra at pp. 8-9.* Regardless, this creates an ambiguity in the document which was admittedly drafted by AES. Under such circumstances, such ambiguity should be construed against AES as the drafter of the document. The principle of *contra proferentem* provides that any ambiguity in a contract will be construed against the party that drafted the language. *Shepley v. New Coleman Holdings., Inc.*, 174 F.3d 65, 70(2d Cir. 1998).

### b. *AES's right to demand return of the funds.*

The last sentence of the Letter Agreement ["*in no event shall any discussions **prior to reaching an acceptable agreement** affect Mahoney & Keane's duty to return the $500,000 to AES upon AES's written request*"] terminated AES' right to demand return of those funds once Milestone and Estech "reached an acceptable [escrow] agreement. *Plaintiff's Moving Stmt ¶¶57-59.*

Milestone does not dispute that AES had the right to recall the money. However, by is own terms, AES' right to recall the loan proceeds was not unconditional. Such right to recall

4

terminated when Milestone and Estech reached an acceptable escrow agreement, which was done. This last sentence alters AES' right to return of the funds under any circumstances. *Plaintiff's Moving Stmt. ¶¶57-61.* AES was entitled to a return of the funds upon its written request *up until the time that the parties "reach an acceptable agreement."* That is what the Letter Agreement says. *See id.*

The fact that Slane recommended adding the last paragraph, including this last sentence, into the Letter Agreement, supports Milestone's position. It was Slane who was fully aware of Milestone's requirement that a fully funded escrow be in place before the Vessel would be directed to the load port. *Plaintiff's Moving Stmt ¶¶25-26.* Despite this, Slane never bothered to advise AES of this condition precedent. *Plaintiff's Moving Stmt ¶54.* AES admits, "the money was recallable by AES until the Escrow Agreement and charter party were executed." *AES Brief at 16.* It is obvious, as AES points out, that "neither agreement was finalized and entered into until, at the earliest, several hours after the money was wired to M&K."[4] It should be of no surprise that the Escrow Agreement was finalized after the funds were wired to M&K. As stated repeatedly, receipt of the $500,000 by the escrow agent was an absolute condition precedent to Milestone fixing the charter party. *Voievudskyi Initial Decl. ¶16-20; Plaintiff's Moving Stmt ¶¶25-27.*

The fact is that once Milestone was advised that M&K had received the funds for the Escrow Agreement, which was the last step to finalizing the charter party, Milestone directed the Vessel to the load port to carry out her voyage. *Plaintiff's Moving Stmt ¶¶30-32.* Milestone

---

[4] AES states that the money was wired to M&K "in trust under the terms of the trust letter" (AES Brief at 16), however, Plaintiff's position is while that may have been the case initially, once the escrow was executed, the funds became escrow funds no longer subject to return on demand by AES.

would not have fixed the Vessel for this venture if the escrow had not been funded. *Plaintiff's Moving Stmt ¶36.*

Interestingly, despite that AES has spent a significant amount of time discussing the words used in the Letter Agreement, it has ignored the last sentence completely. AES admits that "[t]he final version of the Escrow Agreement, agreed to late in the day on December 2, 2010, provided that Estech was to transfer $500,000 which would constitute an "Escrow Account" to M&K as Escrow Agent." *AES Brief at 5.* The facts and documents before the Court evidence that this was done. Milestone was told that the funds were received into M&K's escrow account by the escrow agent.[5] *Plaintiff's Moving Stmt ¶30.* Based on this notification, the final Escrow Agreement was signed and performance under the charter party commenced by Milestone. *Plaintiff's Moving Stmt ¶32.*

This conclusion is the only one that makes any sense. "Courts do not favor interpretations of contracts which render some of their language nugatory. Otherwise, the sanctity of contractual arrangements would be adversely affected." *Chemical Bank v. Affiliated FM Ins. Co.*, 1993 A.M.C. 1743, 1749 (S.D.N.Y. 1993) (citing *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992); *Oreck Corp. v. Whirlpool Corp.*, 579 F.2d 126, 133 (2d Cir.) (*en banc*), *cert. denied*, 439 U.S. 946 (1978)).

On several occasions throughout its brief, AES states that the transfer of the funds was not really to fund the escrow agreement, but was actually to show that Estech had access to the money. The inherent flaw in AES's argument is illustrated by the commercial reality of this arrangement. Milestone was never aware of these alleged loan conditions now identified for the

---

[5] AES's Preliminary Statement wherein they indicate that "Milestone never did anything to request or confirm transfer of the money from trust to escrow or communicated with AES in any way whatsoever" is inaccurate. Milestone was advised by M&K that the funds were in fact received into Escrow. *See Plaintiff's Moving Stmt ¶30.*

first time by AES.  Milestone was never advised that the funds being sent to the escrow agents was not really a loan, or that further documentation or acceptable collateral was required to secure AES's now apparently "proposed loan" to Estech.  This is not surprising given that there is not a single communication to even suggest, let alone confirm this. Not once did Slane or AES advise Milestone or M&K that the transfer of the $500,000 was not really security, despite that Slane was fully aware that the condition precedent to the charter party was a fully funded escrow.  *Plaintiff's Moving Stmt ¶36.*  Not once did Slane bother to tell AES about this absolute condition, despite that he was negotiating the terms of the Escrow Agreement and went directly to AES to seek this loan on behalf of Estech.  *Plaintiff's 56.1(b) Stmt ¶54.*

Neither AES nor Estech told Milestone that the money was not really released to them. AES had direct communications with the escrow agent about wiring the funds and never advised the escrow agent that this money was security for security only until other security could be arranged.  *Plaintiff's 56.1(b) Stmt ¶¶27, 31, 52.*

In sum, AES's arguments are nothing more than self-serving characterizations of the agreements, alleged to be the result of confusion or miscommunication.  The Letter Agreement expressly contemplates return of the funds *only up until the finalization of the escrow agreement*. *Plaintiff's Moving Stmt ¶¶55-59.*  AES and Estech knew exactly what this deal was and what that language signified. AES is now trying to create ambiguity through a distorted presentation of extrinsic evidence.  Such an argument is only relevant if the Letter Agreement is deemed to be ambiguous. The only interpretation that makes sense and harmonizes the entire transaction, as evidenced by all of the simultaneous agreements and communications, is the one presented by Milestone.

7

**2.     The Loan Agreement**

AES loaned $500,000 to Estech to fund the Escrow Agreement. *Plaintiff's Moving Stmt ¶37, 40-41.* As stated, there is no evidence to support AES's position that this money was not truly a loan, but only meant to be a transfer – of a half million dollars – "in order to demonstrate to Milestone that Estech had the ability to post the security being demanded," and that "while AES was willing to loan the money, they were not willing to do so without additional supporting details and collateral." *AES Brief at 6-7.* AES's *ex post facto* explanation is unsupported. The documents contradict AES's argument. If, in fact, AES wired this money only to show that Estech had the ability to post security, but AES never relinquished control of the funds, then the reality is that Estech did not have the ability to post any security, because, as AES states, the funds were always AES funds, were never really loaned to Estech and were never relinquished by AES. *AES Brief at 21.* If AES and Estech were not involved in a joint venture as AES alleges, then how is it even conceivable that Estech would have any type of access to funds to show it could post security by money that it never really had control over?

AES's statements that it would wire the funds to a trust account "while Estech arranged for the requested documentation and security . . ." is contradicted by AES's own testimony. AES did see the Escrow Agreement and admittedly provided edits to that document, all of which were incorporated. *Plaintiff's 56.1(b) Stmt ¶26, 38, 46.* AES admits that it never asked to see the charter party or the final escrow because it did not care about those documents. *Plaintiff's 56.1(b) Stmt ¶47, 53.*

Finally, in further support of the above conclusion, the Note executed between AES and Estech for the $500,000 loan cannot be ignored. This Note speaks for itself. It states the terms and conditions under which AES may demand payment from Estech for the $500,000 loan,

8

principal and interest.  Despite the clear terms in that document, AES would like the Court to assume language not incorporated therein. *AES Brief at 21*.  AES argues that, unless and until AES relinquished control of its money, Estech would not owe repayment of the $500,000, another *ex post facto* explanation that is self-serving.  AES argues that, while it never relinquished control of the money, Estech still used it during an interim period and therefore owed AES interest for that use.  AES' justification for this is not supported by the record.  The Note evidences that this was a loan. *Plaintiff's Moving Stmt ¶40-42*.

The transfer of the $500,000 as evidenced by the Note was a loan for AES to Estech.

**3.     The Escrow Agents**

While AES and M&K entered into the Letter Agreement, the simultaneous communications and emails between AES, M&K and Milestone through its London solicitor,[6] confirm that the $500,000 at issue was to fund the Escrow Agreement and that the terms of the escrow were negotiated and agreed to between the parties. *Plaintiff's Moving Stmt ¶¶36-43, 55, 57-59*.

This confirmation is detailed through a series of email exchanges concluding on December 2. *See also AES's Brief at 6-10*.  The result of these communications, between AES and M&K and M&K and Milestone's solicitors, and Slane and AES, was the Letter Agreement discussed *supra* and the executed Escrow Agreement.  AES wanted unconditional return of the funds it was transferring to M&K on behalf of Estech.  Milestone agreed with that, *only up to the point when the escrow* and thus charter party, *was finalized. Plaintiff's Moving Stmt ¶¶36-43, 55, 57-59*.  Slane, who admittedly provided edits to the Letter Agreement after reviewing it with

---

[6] AES's statement at page 10 of its Brief suggesting that Milestone's London solicitor had only an hour and a half to review and approve M&K's signing the Letter Agreement serves no purpose.  The Letter Agreement is two paragraphs long.  It says what it says and the inclusion of the last sentence clearly satisfied Mr. Seward.  This suggestion that Mr. Seward did not even read the Letter Agreement is offensive.

AES's general counsel, was aware of Milestone's absolute condition that a fully funded escrow had to be in place before the Vessel would be final fixed. *See id.*

Based on all of these factors, the only reasonable conclusion is that this exchange, along with Slane's knowledge of both AES's and Milestone's goals and requirements, and Slane's providing edits to the Letter Agreement support a finding that the Letter Agreement was extinguished when the terms of the Escrow Agreement were finalized after the funds were received by M&K. Slane was aware of Milestone's condition precedent of having the $500,000 of funds in an escrow. Slane was aware of AES's desire to have the funds unconditionally returned. Slane, with knowledge of each entity's respective positions, edited the Letter Agreement between AES and M&K. It is not only reasonable but also logical and practical to conclude that Slane's recommended additions to the Letter Agreement incorporated a compromise between AES and Milestone so that the funds would be unconditionally returned only up to the point in time when the Escrow Agreement was finalized. *Plaintiff's Moving Stmt ¶¶35-43, 55, 57-59.*

If the Letter Agreement serves the purpose that AES alleges, then one must question why the Note was even necessary.

**4.     Joint Venture Relationship**

Milestone incorporates its arguments already made in its Moving Brief at pp 9-12 related to the Defendants joint venture relationship. There are only a few points that need to be reiterated. First, it is clear that AES exercised control over the venture herein. It loaned over one million dollars to Estech in order to allow it to carry out two sales and one shipping contract. It drafted the Letter Agreement for the Escrow Agent and even amended the terms of the Escrow Agreement. Subsequent letters between AES and Estech contemplated how the profits from this

transaction would be split and even how the loan proceeds would be repaid.  There is nothing arms-length about AES's involvement in this transaction.  *Plaintiff's Moving Stmt ¶¶12, 14, 16-17, 41, 57-58, 70-72.*

**5.     Fraud**

The simple fact is that Milestone had absolutely no knowledge about AES's unsupported *ex post facto* allegations that its loan of $500,000 to Estech was only "proposed" and hinged on AES's expectation of some other security before AES would actually "relinquish" control of the funds, despite that it did in fact wire transfer the money to M&K.  *Plaintiff's 56.1(b) Stmt ¶27-28, 31, 52.*  AES and Estech, through Slane and Michalek, represented that AES loaned $500,000 to Estech in order to comply with the security requirements of the charter party.  No other communications were relayed.  AES, Estech and Slane were aware of the absolute condition precedent of the funded escrow before the Vessel would be final fixed.  *Plaintiff's Moving Stmt ¶¶36-37, 39-41.*  Now, AES alleges that these representations were not made, which makes them false.

Milestone clearly relied on these representations and Estech and AES knew that Milestone would not perform without confirmation of this.  Their conduct and representations fraudulently induced Milestone to fix the Vessel and perform its obligations under the charter party.  *See e.g., Cofacredit S.a. v. Windsor Plumbing Supply, et al.*, 187 F.3d 229, 238-39 (2d Cir. 1999).

In addition, AES's interpretation of its Letter Agreement as it proposes makes no commercial or logical sense in any regard.  It fails the "straight face test." There is simply no point or viable explanation to justify AES's entering into multiple agreements that it drafted such that, at the end of the day, allow AES to "sort of but not really" place half a million dollars into a third

third party escrow agent's account, only to be able to take it back – at will – at any time – and for any reason.

The result of AES's *ex post facto* arguments prove how Estech and AES, with the help of Mr. Slane, fraudulently induced Milestone to enter into the charter party and fix its Vessel by leading Milestone to believe that the fully funded escrow agreement, an absolute condition precedent to Milestone's performance, was in place.  Slane acted on behalf of Estech and was the go-between for Estech and AES.  Slane communicated directly with Mr. Seward and Milestone's agents about the escrow agreement and its terms and conditions.  Slane was aware of AES's goal to have the fund returned. Slane was aware of Milestone's condition precedent to fixing a vessel. *Plaintiff's Moving Stmt ¶¶25, 27, 35-36.*  Slane obtained the $500,000 loan from AES for the Escrow Agreement and even signed the Escrow Agreement in Michalek's absence.  *Plaintiff's 56.1(b) Stmt ¶46; Plaintiff's Moving Stmt ¶40.*

Neither Slane nor AES ever bothered or thought to advise Milestone or M&K that the money was not really for the escrow nor that AES ever really relinquished control over it. None of this language was in the Letter Agreement and no such intent is contained in any of the dozens of e-mails exchanged between all of the parties herein. *Plaintiff's 56.1(b) Stmt ¶¶27-28, 31, 52.*

Such blatant omissions by the Defendants equates to fraud against Milestone. *Cofacredit S.A., supra*. Milestone relied on the confirmation that the funds were received and a signed Escrow Agreement before it would fix a vessel.  But for this, Milestone would not have fixed the SANTA BARBARA.  As it was, because the terms of the escrow were not finalized and funding was not transferred before Dec. 2, Milestone lost the opportunity to fix the RODON and the SANTA BARBARA was substituted because she was still available after the escrow funds were

received by M&K and the Escrow Agreement was signed by all parties. *Plaintiff's Moving Stmt* *¶¶26-27.*

There is nothing innocent or confusing about AES or Estech's dealings with Milestone.

## CONCLUSION

The underlying reality of this transaction is that this was a significant deal involving both sales contracts and a charter party.  Because Estech was a new corporation, Milestone-as the owner of the vessel-required security for performance.  It was a condition precedent and a material term of the charter party contract.  The Letter Agreement was designated as between as AES and M&K only, neither Estech nor Milestone being a party, and was specifically drafted to allow AES to have immediate return of the loan proceeds *only*  in the event that the escrow agreement between Milestone and Estech was not consummated.  That is how the Letter Agreement reads, that is what the Escrow Agreement stands for, and that is what the Note evidences, all of which is further supported by the testimony of the parties and other documents cited.  And that is the commercial reality of the transaction.

For all of the foregoing reasons, AES's motion for summary judgment must be denied.

Dated: August 5, 2011
  New York, NY

The Plaintiff,
MILESTONE SHIPPING S.A.

By: *Claurisse C Orozco*
Claurisse C. Orozco (CC 3581)
Thomas L. Tisdale (TT 5263)
TISDALE LAW OFFICES, LLC
60 East 42nd Street, Suite 1638
New York, NY 10165
(212) 354-0025 / (212) 869-0067 (fax)
corozco@tisdale-law.com
ttisdale@tisdale-law.com

# AFFIRMATION OF SERVICE

I hereby certify that on August 5, 2011 a copy of the foregoing Plaintiff Milestone Shipping S.A.'s Memorandum of Law in Response to and in Opposition of AES's Motion for Summary Judgment was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's CM/ECF system.

Estech Trading, LLC
261 West Johnstown Road
Columbus, OH 43230

Claurisse Campanale-Orozco

14